# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:17-cv-00218-RJC

| | | |
|---|---|---|
| DOUGLAS A. MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 9, 10); and Defendant's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 11, 12).

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Douglas A. Morrison ("Plaintiff") seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On August 20, 2013, Plaintiff filed his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. No 8 to 8-1: Administrative Record ("Tr.") at 262, 269). In his application, Plaintiff alleged an inability to work due to disabling conditions beginning on January 27, 2012. (Tr. at 269). Plaintiff's application was denied initially on February 10, 2014, (Tr. 178, 183) and again upon reconsideration

on June 10, 2014 (Tr. 190, 199). A hearing was then held on November 30, 2015 before Administrative Law Judge ("ALJ") Jonathan Baird. (Tr. 27). During the hearing, Plaintiff amended the onset of disability date to August 20, 2013. (Tr. 31). On March 25, 2016, the ALJ denied Plaintiff's claims, (Tr. 155), and the Appeals Council thereafter denied Plaintiff's request for review on June 7, 2017, (Tr. 1), rendering the ALJ's decision the final determination of Defendant.

A. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 20, 2013, the date of his application, and March 25, 2016, the date of the ALJ's decision.[1] (Tr. at 158). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. at 168–69).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 168–69).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since August 20, 2013, the amended alleged onset date. (Tr. at 160). At the second step, the ALJ found that Plaintiff had the following severe impairments: "major neurocognitive disorder due to traumatic brain injury and major depressive disorder, recurrent." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Tr. at 161). During this step, the ALJ noted that Plaintiff has "moderate difficulties in maintaining concentration, persistence, or pace." (Tr. at 162).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited

to performing simple, routine, and repetitive tasks. He could not understand, remember, or carry out any detailed instructions. The claimant's work must be in a low stress job, defined as one requiring only occasional decision making and only occasional changes in the work setting. The claimant can have no production rate or pace work. The claimant must be reminded of his tasks an additional two times per day.

(Tr. at 162). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Tr. at 163).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. at 167). Finally, at the fifth and final step, the ALJ concluded that, after "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. at 168). This conclusion was in part based on testimony obtained from a Vocational Expert ("VE"). (Tr. 168). During the hearing, the ALJ posed a series of hypotheticals to the VE that factored in Plaintiff's above limitations. (Tr. at 49–52, 168). In response, the VE testified that Plaintiff can perform jobs as a (1) dishwasher (DOT number 318.687-018), (2) industrial cleaner (DOT number 381.687-018), and (3) landscape laborer (DOT number 408.687-014). (Tr. at 49–50, 168). Therefore, the ALJ determined that Plaintiff was not under a

"disability," as defined by the Social Security Act, between August 20, 2013 and March 25, 2016, the date of the ALJ's decision. (Tr. at 169).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION

On appeal before this Court, Plaintiff argues that the ALJ erred in (1) not identifying apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") and (2) not providing a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments. (Doc. No. 10). The Court disagrees with both of Plaintiff's assertions, for the reasons set forth below.

A.  The ALJ sufficiently relied on the VE's testimony in determining Plaintiff's RFC because no apparent conflict exists between the VE's testimony and the DOT.

Plaintiff first argues that an apparent conflict exists between the VE's testimony and the DOT. (Doc. No. 10 at 5–9). Specifically, Plaintiff contends that the VE's recommended jobs apparently conflict with his limitation that Plaintiff should only perform "simple, routine, repetitive tasks" and that Plaintiff "could not understand, remember, or carry out any detailed instructions." (Doc. No. 10 at 7). Under the DOT descriptions, the jobs of dishwasher, industrial cleaner, and

landscape laborer all have a Reasoning Level 2, which requires workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situation." DOT App. C, 1991 WL 688702 (1996). Plaintiff alleges that a conflict exists between Reasoning Level 2 requiring the ability to carry out detailed instructions and the claimant's limitation to "simple, routine, repetitive tasks." (Tr. 162).

This Court has addressed this very argument before and has continually held that "[r]easoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" Corvin v. Berryhill, No. 5:17-CV-92-RJC-DSC, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)). Indeed, this Court has expressly found that "there is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with [Reasoning Level 2]." Thomas v. Berryhill, No. 3:16-CV-00836-MOC, 2017 WL 3595494, at *5 (W.D.N.C. Aug. 21, 2017), appeal docketed, No. 17-2215 (4th Cir. Oct. 18, 2017) (quoting Carringer v. Colvin, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014)). As Defendant points out, other courts have found that "even level 3 reasoning is not inconsistent with the ability to do only 'simple' work." Id. (citing Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) and Clontz v. Astrue, No. 2:12-cv-12-FDW, 2013 WL 3899507, at *5 n.6 (W.D.N.C.

Jul. 29, 2013)). Therefore, no apparent conflict exists between Reasoning Level 2 jobs and a limitation to "simple, routine, repetitive tasks." (Tr. 162).

B. The ALJ adequately determined Plaintiff's RFC through a function-by-function analysis.

1. The ALJ accounted for Plaintiff's moderate limitations in concentration, persistence or pace in his RFC determination.

Next, Plaintiff argues that the ALJ's RFC determination did not properly account for Plaintiff's nonexertional mental limitations. (Doc. No. 10 at 9–13). The ALJ limited Plaintiff to only performing "simple, routine, and repetitive tasks . . . in a low stress job, defined as one requiring only occasional decision making and only occasional changes on the work setting . . . [and] no production rate or pace work." (Id.). The ALJ added that Plaintiff "must be reminded of his tasks an additional two times per day." (Id.). Plaintiff contends that these limitations do not adequately account for the ALJ's finding that Plaintiff has "moderate difficulties in maintaining concentration, persistence, or pace." (Id.). Specifically, Plaintiff claims that the ALJ failed to explain how Plaintiff possessed the ability to stay on task in his RFC discussion. (Doc. No. 10 at 11–12).

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As such, limiting a claimant's RFC to simple, routine tasks or unskilled work does not alone address any moderate limitations in that claimant's concentration, persistence or pace. In reaction to this rule, the Court has come across opinions where the ALJ

added another limitation: working at a non-production pace.  It is true that this Court has, along with many of the other district courts in North Carolina, found that the limitation of nonproduction pace alone does not sufficiently account for a moderate limitation in concentration, persistence, or pace in light of <u>Mascio</u>.  <u>Kittrell v. Colvin</u>, No. 5:14-cv-163-RJC, 2016 U.S. Dist. LEXIS 33929, at *11 (W.D.N.C. Mar. 16, 2016) (unpublished).[2]  It is also true that other courts have found that such a limitation *does* adequately address impairments in concentration, persistence or pace when either supported by the medical record or when added to other limitations, such as a stable work environment.[3]  As the Code of Federal Regulations indicates, the area of

---

[2] Citing <u>Biddell v. Colvin</u>, No. 1:15-cv-80-MOC, 2016 U.S. Dist. LEXIS 24404, 2016 WL 815300, at *5 (W.D.N.C. Feb. 29, 2016) (unpublished); <u>Weeks v. Colvin</u>, No. 5:14-cv-155-D, 2015 U.S. Dist. LEXIS 119238, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished); <u>Jones v. Colvin</u>, No. 4:14-cv-200-RN, 2015 U.S. Dist. LEXIS 106622, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015) (unpublished); <u>Hagedorn v. Colvin</u>, No. 2:12-cv-85-RLV, 2015 U.S. Dist. LEXIS 94071, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (unpublished); <u>Salmon v. Colvin</u>, No. 1:12-cv-1209-LCB, 2015 U.S. Dist. LEXIS 43334, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished).  <u>Id.</u> at *11–13 n.3.

[3] <u>See, e.g.</u>, <u>Gordon v. Berryhill</u>, No. 3:16-cv-130, 2017 WL 5759940, 2017 U.S. Dist. LEXIS 195089, at *6–7 (W.D.N.C. Nov. 28, 2017) (unpublished); <u>Jarek v. Colvin</u>, 3:14-CV-620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) (unpublished) *adopted by* 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) *aff'd by* 2017 WL 129024 (4th Cir. Jan. 13, 2017) (finding that the limit of "repetitive tasks *not at an assembly line pace*" did account for limitations in concentration, persistence or pace); <u>White v. Colvin</u>, No. 1:14-CV-161-RLV, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016) (unpublished); <u>Horning v. Colvin</u>, No. 3:14-CV-722-RJC, 2016 WL 1123103 (W.D.N.C. Mar. 21, 2016) (unpublished); <u>Linares v. Colvin</u>, No. 5:14-cv-120-GCM, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished); <u>but see</u> <u>Hagedorn v. Colvin</u>, No. 2:12CV85-RLV, 2015 WL 4410288, 2015 U.S. Dist. LEXIS 94071, at *10 (W.D.N.C. July 20, 2015) (unpublished) (finding that limiting a claimant to "simple, routine, and repetitive tasks in a low-production work setting with no extensive interaction with co-workers and no public contact, and that the work environment should be low-stress, defined as occasional change in job setting or decision making" accounted for some of the mental limitations found in SSR 96-8p,

concentration, persistence or pace encompasses a broad domain of mental functioning and does not elevate one factor as the ultimate evaluator of a claimant's ability to concentrate, persist or maintain pace at work:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.3. Therefore, an ALJ can consider myriad factors in evaluating a claimant's limitations in concentration, persistence or pace.

Upon examining this illustrative list set out by the regulation, the Court finds that the ALJ's analysis and explanation of Plaintiff's nonexertional mental limitations in performing work-related functions was satisfactory and expressly accounted for Plaintiff's moderate difficulties with concentration, persistence or pace. First, the ALJ limited the claimant to "performing simple, routine, and repetitive tasks." (Tr. 162). It is true that this limitation, standing alone, would not have adequately accounted for Plaintiff's moderate limitations in concentration, persistence or pace under Mascio. However, the ALJ did not stop his RFC analysis there. The ALJ elaborated that the "claimant's work must be in a low stress job, defined as one requiring only occasional decision making and only occasional changes

---

but nonetheless failed to address a limit in concentration).

in the work setting." (Tr. 162). This parallels the requirement of "stable work environment"—an additional limitation that, when considered in combination with the limitation of nonproduction pace, can address a Plaintiff's limitation in concentration, persistence or pace. Darby v. Berryhill, No. 1:16-CV-00366-RJC, 2018 WL 310136, at *5 (W.D.N.C. Jan. 5, 2018). The ALJ also limited Plaintiff to a nonproduction pace when he specified that Plaintiff "can have no production rate or pace work." (Tr. 162). This additional limitation relates to exactly what it sounds like: pace. Thus, the ALJ accounted for Plaintiff's limitations in pace in his RFC.

Plaintiff emphasizes that the ALJ failed to explain and adequately account for Morrison's ability to stay on task for a full workday and workweek. Plaintiff is mistaken. As the ALJ specified during the hearing, the hypotheticals posited to the VE "look[ed] at someone's ability to do eight hours a day, five days a week . . . with the limitations" identified. (Tr. 52). The ALJ further tailored Plaintiff's RFC to address Plaintiff's difficulties in concentration, persistence or pace by stating that Plaintiff "must be reminded of his tasks an additional two times per day." (Tr. 162). The need for reminders relates to Plaintiff's ability to concentrate and persist in performing work-related tasks for a full workday. In sum, the ALJ limited Plaintiff to performing simple, routine, and repetitive tasks, (1) at a non-production pace, (2) in a low stress environment, and (3) with frequent reminders of his task. These additional limitations, when viewed as a whole, adequately account for Plaintiff's moderate limitations in concentration, persistence or pace. Plaintiff's case differs from Mascio, in which the plaintiff's RFC contained no mental limitations. Here, the

ALJ added several limitations to adequately account for Plaintiff's nonexertional mental limitations.

 2. The ALJ performed a function-by-function analysis of Plaintiff's moderate limitations in concentration, persistence or pace.

Not only does the ALJ's RFC determination address Plaintiff's limitations in concentration, persistence or pace, his narrative function-by-function analysis supports his overall conclusion. The ALJ granted great weight to the consultative examination of Dr. Howard Slutzsky, Psy. D., who conducted a cognitive functioning assessment on Plaintiff after the hearing. (Tr. 164–65). Dr. Slutzksky's examination was the most current assessment of Plaintiff's cognitive abilities. (Tr. 166). The ALJ included in his opinion that, when conducting a mental status examination, Dr. Slutzsky found that Plaintiff "followed simple written and verbal instructions without comprehension problems[,] . . . demonstrated moderate difficulty with recall[,]" and functioned in the average range of intelligence with moderate memory difficulties." (Tr. 165). The ALJ also noted that "Dr. Slutzsky opined that the claimant could tolerate extended work stressors and demands and would adjust adequately to a work environment schedule." (Id.). The ALJ also applied great weight to the medical opinion of Dr. Margaret Barham, Ph. D., for the Disability Determination Service, which specifically addressed Plaintiff's limitations in concentration, persistence or pace. (Tr. 166–67). In doing so, the ALJ specifically noted that Dr. Barham found Plaintiff could

 understand and remember short and simple instructions, maintain attention and concentration for two hours at a time, perform simple and routine tasks in settings that do

> not require intensive interpersonal relating, and perform
> those tasks in relatively stable work settings.

(Id.). The ALJ noted that the "[r]ecord does not contain any opinion from a treating source describing more significant . . . mental functional difficulties." (Tr. 167). By explicitly incorporating the above narrative discussions of Plaintiff's mental limitations made by both Dr. Slutzsky and Dr. Barham, the ALJ fulfilled his duties to complete a function-by-function analysis. See Linares, 2015 WL 4389533 at *3 ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p.") (citing Lemken v. Astrue, No. 5:07-CV-33-RLV-DCK, 2010 U.S. Dist. LEXIS 128659, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010) and Onishea v. Barnhart, 116 Fed. Appx. 1, 2004 WL 1588294, at *1 (5th Cir. 2004)). It was after incorporating the above RFCs that the ALJ assigned the additional limitations to Plaintiff's RFC of "simple work in a low-stress environment with two task reminders per day to accommodate intermittent memory problems." (Tr. 167). Therefore, counter to Plaintiff's assertion, the ALJ built "an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016).

In sum, three critical distinctions separate Plaintiff's case from the one in Mascio. First, Plaintiff does not point to contradictory evidence within the record, but merely the purported absence of an explanation on how Plaintiff can stay on task. (Doc. No. 10 at 11–12). Second, as mentioned above, the ALJ here provided limitations that directly address impairments to concentration, persistence or pace.

And third, the ALJ's analysis was logical and adequately demonstrated how he arrived at his conclusion and therefore did not frustrate this Court's ability to conduct a "meaningful review." Mascio, 780 F.3d 623, 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Plaintiff essentially attempts to hold the ALJ to the per se rule the Fourth Circuit explicitly rejected in Mascio.[4] And therefore, Plaintiff's argument must be rejected as well.

## IV. CONCLUSION

Because (1) no apparent contradiction exists between the VE's testimony and the DOT and (2) the ALJ sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence or pace in his RFC determination, substantial evidence supports the ALJ's decision.

**IT IS, THEREFORE, ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2.  Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;

3.  The Clerk of Court is directed to close this case.

---

[4] In Mascio, the plaintiff alleged that the ALJ erred by not performing an explicit function-by-function analysis. While the Fourth Circuit agreed that the ALJ needed to conduct a more meaningful review in Mascio's case, it refused to adopt a per se rule requiring remand when the ALJ does not conduct a function-by-function analysis. "We agree that a per se rule is inappropriate given that remand would prove futile in cases where the irrelevant or uncontested.'" Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Signed: September 17, 2018

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT  with access to All Parties/Defendants.